HOPETON DRAKE ATTERBURY QUAID and MARY HOPETON SMITH REGISTER, Appellants, *v.* BERNARD RATKOWSKY, Respondent.

First Department, May 31, 1918.

Equity — equity will not allow corporate entity to be used as an instrument of fraud — equitable estoppel — when owner of corporate properties may be personally charged with corporate obligations.

A suit in equity may be maintained against the individual owner of practically all the stock of a corporation to compel him to pay an unsatisfied judgment obtained against the corporation, where it appears that the corporation was a mere title holder of the defendant's property for his fraudulent purposes; that he used the entire income from the corporate property as his private property; that he held himself out to the plaintiff as identical with the corporation and assured the plaintiff that his private property stood behind it and thereby induced the plaintiff to extend a bond and mortgage and to reduce rent payable by the corporation upon his personal guaranty of payment, and where it further appears that the plaintiff did not give credit to the corporation but to the defendant only, and that the latter did not repudiate his obligation but acquiesced in the plaintiff's reliance upon it; that he filed no annual reports of the corporation, etc., and fraudulently caused to be transferred to himself the properties of the corporation in order to make it judgment proof, which transfers he concealed from the plaintiff.

Under the circumstances aforesaid the defendant is equitably estopped from denying his liability and it was error to send the suit to the law side of the court.

A court of equity will refuse to permit a mere corporate entity, found to be a sham, to be used as an instrument of fraud.

DOWLING and SMITH, JJ., dissented, with opinion.

APPEAL by the plaintiffs, Hopeton Drake Atterbury Quaid and another, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 19th day of December, 1917, striking the action from the Special Term calendar and remanding it to the Trial Term as an action at law triable by jury.

The order was made by the presiding justice at Special Term at the close of plaintiffs' case.

*Charles Green Smith,* for the appellants.

*Harry A. Gordon* of counsel [*I. Maurice Wormser* with him on the brief], for the respondent.

SHEARN, J.:

An action against the individual owner of practically all the shares of stock of a corporation to compel the payment of an unsatisfied judgment obtained against the corporation is on its face unusual. It is not without precedent, however, and under the circumstances existing in this case it is, upon what seems to me to be sound principle, maintainable. Upholding the right of action does not involve any departure from the well-settled rule that the mere fact that an individual owns practically all the shares of stock of a corporation does not subject him to any personal liability at law for the debts of the corporation. (*Tilley* v. *Coykendall,* 172 N. Y. 587; *Buffalo Loan, T. & S. D. Co.* v. *Medina Gas Co.,* 162 id. 67; *Werner* v. *Hearst,* 177 id. 63.) It simply involves recognition of the principle that liability may be incurred, enforcible in equity, founded upon estoppel and upon the right of a court of equity to refuse to permit a mere corporate entity, found to be a sham, to be used as an instrument for fraud.

The proved facts in the case, broadly summarized in the opinion of Mr. Justice DOWLING, would support these findings: (1) That the realty company was a mere titleholder of the defendant's property for defendant's fraudulent purposes; (2) that defendant took and used the whole income from the properties whose nominal title was in the realty company, mingling it with his own funds, and operated and managed the properties as his private property; (3) that defendant held

himself out to the plaintiffs as the real owner of the corporation and as identical with it and assured plaintiffs that his private property stood behind it and thereby induced the plaintiffs to extend the bond and mortgage and accept his corporation as substituted lessee, and further to indulge him in payment of rent and interest by reducing the rent in reliance upon his personal guaranty of payment and his assurance that the obligation of the corporation and of himself were one and the same; (4) that plaintiffs never gave the corporation credit or faith but gave credit only to the defendant; (5) that defendant evaded a written guaranty but failed to repudiate or deny his obligation and acquiesced in the plaintiffs' reliance upon it after its terms had been definitely stated and repeated to him in writing; (6) that defendant filed no annual corporate reports, kept no corporate minutes and ignored all corporate requirements for the protection of creditors; (7) that defendant fraudulently caused to be transferred to himself all real properties of value still held in the name of the corporation in order to make the corporation judgment proof, and (8) that defendant concealed from the plaintiffs the transfers to himself and in large part moneys which he took from the properties.

When the plaintiffs recovered judgment against the corporation upon the bond and for rent and taxes accrued upon the leasehold, the benefits of which leasehold the defendant had obtained and enjoyed solely upon the representation and agreement that he recognized the obligation as personal to himself and guaranteed its discharge, plaintiffs recovered judgment upon what was in fact the obligation of the defendant. This obligation was not enforcible against him at law because he did not personally assume payment of the bond. Neither was his guaranty enforcible at law, because of the Statute of Frauds. Plaintiffs had no remedy at law, and when they were remitted to the law side of the court this was tantamount to turning them out of court. True, this would not foreclose plaintiffs from following the property into the hands of the defendant and asking for an accounting, but this was a procedure which the proof shows would have been in all probability unavailing, owing to the opportunity afforded the defendant for proving claims of his own against the alleged

corporation if the latter were regarded as carried on in good faith and not as a sham and a cloak for fraud. The question is, therefore, presented whether, under the peculiar facts of the case, power exists in a court of equity to enforce the obligation of the corporation as that of the defendant and compel him to perform specifically and discharge his obligation by paying the judgment obtained against the corporation, founded upon an obligation the validity of which the defendant is estopped from denying.

We are dealing with a liability growing out of a lease of real property, where there has been performance on the part of the plaintiffs and an enjoyment of the property and acceptance of the benefits by the party sought to be charged. We have the clearly established agreement of the defendant to be responsible for the bond and the rent. As we may not in law disregard the corporate entity, this agreement was in law one to answer for the debt of another, and, therefore, unenforcible at law because not in writing. "The principle that a suit in equity may be maintained for the specific performance of an agreement, although an action at law could not be based upon it, is illustrated by cases of the transfer of possibility or expectancy of estates, assignments of things in action, contracts of married women, agreements invalid under the Statute of Frauds, agreements for the sale of land where the death of the vendor ensues before completion, agreements between a man and woman who afterwards marry, and verbal contracts which have been partially performed. In these and in many other cases, although an action at law could not be maintained, courts of equity hold such contracts as binding and decree their specific performance if free from objections which would generally prevent equitable relief." (*Winne* v. *Winne*, 166 N. Y. 263, 271.) "It has been a fundamental principle of the courts of equity from the beginning, in dealing with the statute, that it shall not be made a means of committing a fraud, especially as its expressed purpose was the prevention of a large class of frauds and perjuries. In particular the rule was early established that if plaintiff was induced by the actual fraud of defendant to dispense with a written memorandum of the contract, he may have specific performance notwithstanding the statute." (36 Cyc. 642.) "Where an

agreement has been verbally made which the statute requires to be in writing, and through the actual fraud of one party the execution of the written instrument is prevented, and the other party is induced to accept and rely upon the verbal agreement as valid and binding, a court of equity will not permit the fraudulent party to set up the Statute of Frauds as a defense, but will enforce the agreement against him, although it is merely verbal. Of course, there must be actual fraud as the distinguishing feature of the transaction — something more than the mere omission to put the contract into writing. The plaintiff must be induced through the deceit, false statements, or concealments of the other party to waive a written instrument, and to rely upon the parol undertaking." (Pom. Eq. Juris. [3d ed.] § 921. See, also, *Young* v. *Overbaugh*, 145 N. Y. 158; *Messiah Home for Children* v. *Rogers*, 212 id. 315.) In the case at bar we have evidence sufficient to sustain a finding of actual fraud; we have performance on the part of the plaintiffs in reliance upon the defendant's personal agreement, and we have the defendant, after enjoying the possession of the property and its proceeds, seeking to evade responsibility by saying that his promise was not in writing. There is present every element of equitable estoppel, entitling the plaintiffs to go into equity and compel the defendant to perform his agreement by paying the debt of the corporation, guaranteed by him and now reduced to judgment.

The same principle of estoppel may be availed of by the plaintiffs in equity to prevent the defendant from denying that the agreement and debt of the corporation were his own. While the courts of law strictly observe the fiction of corporate entity, there has been for years a growing indisposition to permit corporate entity to be employed either as an instrumentality or as a cloak for fraud or for successful evasion of the law. (*McCaskill Co.* v. *United States*, 216 U. S. 504; *Westinghouse Electric & Mfg. Co.* v. *Allis-Chalmers Co.*, 176 Fed. Rep. 362; *Linn & Lane Timber Co.* v. *United States*, 196 id. 593; *United States* v. *Lehigh Valley R. R. Co.*, 220 U. S. 257, 274; *Southern Pacific Terminal Co.* v. *Interstate Commerce Commission*, 219 id. 498, 523; *Searchlight Horn Co.* v. *American Graphophone Co.*, 240 Fed. Rep. 745; *Goss & Co.* v. *Goss, No. 2*, 147 App. Div. 698, 702; affd., 207 N. Y. 742; *Garrigues Co.* v.

*International Agricultural Corp.*, 159 App. Div. 877; *Matter of Watertown Paper Co.*, 169 Fed. Rep. 252.)   Lord WESTBURY in *McCormick* v. *Grogan* (L. R. 4 H. L. 82, 97) said: " The Court of Equity has, from a very early period, decided that even an Act of Parliament shall not be used as an instrument of fraud; and if in the machinery of perpetrating a fraud an Act of Parliament intervenes, the Court of Equity, it is true, does not set aside the Act of Parliament, but it fastens on the individual who gets a title under that Act, and imposes upon him a personal obligation, because he applies the Act as an instrument for accomplishing a fraud."   If then, in a case involving lands, the doctrine of equitable estoppel may be applied to breathe life into a contract void under the Statute of Frauds, upon the principle that not even an act of Parliament shall be used as an instrument of fraud, certainly a mere charter of incorporation cannot be availed of successfully for the purpose of accomplishing a fraud.   The defendant, therefore, is not only estopped from denying the validity of his guaranty agreement but he is estopped from denying the truth of his representation to the plaintiffs of the substantial identity of the corporation and himself and that its obligations were his obligations.   Therefore, on principle, it seems to me quite clear that this action was properly brought and is maintainable in equity and that it was error to send it to the law side of the court.   If, in addition to principle, precedent is necessary, a case quite in point is *Baltimore & Ohio Telegraph Co.* v. *Interstate Telegraph Co.* (54 Fed. Rep. 50).

The order appealed from should be reversed, with ten dollars costs and disbursements, and the action remitted to the Special Term for trial.

CLARKE, P. J., and PAGE, J., concurred; DOWLING and SMITH, JJ., dissented.

DOWLING, J. (dissenting):

The question involved in this appeal is whether upon the pleadings and proof plaintiffs had made out any cause of action in equity.   The complaint sets forth, briefly, the following facts:   The defendant Bernard Ratkowsky, and one Kassel Simon and others in January, 1911,

First Department, May, 1918.	[Vol. 183.

organized the R. A. S. Realty Company, hereafter called the corporation, for the purpose of holding and handling their real estate. The capital stock of the corporation was $50,000, divided into 500 shares, of which there were issued to the defendant and Simon respectively 249 each and 1 share each to their respective wives, in payment of certain parcels of real property owned by Ratkowsky and Simon including the leasehold in question. The corporation was also to pay the defendant $92,500 in cash out of the first profits of the company. Among the properties turned over to the corporation was a leasehold on the premises 821 Broadway owned by the plaintiffs, said leasehold having been acquired by defendant and Simon from the 821 Broadway Company, a domestic corporation. There were two leases covering the property both running for twenty-one years and expiring May 27, 1924. Plaintiffs held the bond of the 821 Broadway Company for $125,000, due October 24, 1912, and as collateral security for the payment thereof the leasehold was mortgaged to them. In May, 1911, it is alleged that the entire interest of Simon in the corporation was acquired by defendant, who ever since has been president and director and held all the stock of the corporation, except the qualifying shares put in the names of the other directors, who have been members of his family or relatives. The complaint proceeds to set forth that since May, 1911, the corporation has held no stockholders' or directors' meetings and done none of the things ordinarily done by a corporation in its business, but defendant has conducted, managed and controlled all the corporate affairs and treated its property as his own and has collected and applied to his use all rents, income and proceeds of its properties to the extent of upwards of $425,000. Plaintiffs then allege that they believed defendant and Simon to be the owners of the leasehold until October, 1912, when they called for payment of the bond made by the 821 Broadway Company, whereupon defendant applied for an extension of time and then made known to plaintiffs that the corporation R. A. S. Realty Company had title to the leasehold; but he also told plaintiffs that he was its sole owner, that it was a close corporation confined to his family, and he was using it as the holder of title to his properties; that he was a man of large means and

his personal credit stood back of the corporation; and that he intended to meet all of its obligations as he had in the past. Defendant promised plaintiffs that if they would extend the time of payment of the bond he would have his corporation assume payment of the principal and interest and also all obligations under the unexpired leases on the property and he would personally guarantee full performance of all of said obligations by his corporation. The defendant further induced plaintiffs to grant, in consideration of his personal guaranty, a special concession of rental amounting to $1,250 for the first year and plaintiffs agreed to extend the time of payment of the bond for four years and accepted his corporation as a lessee and to make supplemental leases to it for the balance of the term. An agreement in writing was thereupon made between the plaintiffs and the corporation December 17, 1912, extending the time of payment of the bond to October 24, 1916, and defendant caused the corporation to assume the principal and interest of the bond and plaintiffs delivered supplemental leases of the premises to the corporation covering the unexpired term of the lease. At the same time the plaintiffs gave a memorandum in writing directed to the corporation setting forth that in consideration of the renewal of the mortgage and extension of the supplemental leases and of defendant guaranteeing the mortgage and lease, plaintiffs had consented to remit $1,250 of the rent from November 1, 1912, to November 1, 1913. It is then alleged that defendant kept this written memorandum but never guaranteed the bond and leases in writing and that he paid the rent and interest to plaintiffs by his personal check and treated the obligation as his own until May, 1915, when he stopped paying rent. Default was made in the payment of interest on the bond on November 24, 1915. It is then alleged that the defendant conceived a fraudulent design before permitting default in payments due plaintiffs, whereby he was to deprive the corporation of all of its assets and render plaintiffs' claims unenforcible and thus defraud them out of the amount of their bond and out of the rent. In pursuance of this fraudulent plan he is claimed to have caused the corporation to convey to him at various times certain properties belonging to the corporation without consideration and to grant certain releases

of the subleases upon ·a contract to pay a certain sum in deferred payments, which contract defendant caused to be discounted for cash at once, the amount whereof he retained. It is then set forth that in December, 1915, plaintiffs were obliged to obtain possession of their premises by summary proceedings and thereafter they began an action against the corporation to recover the amount of the bond wherein they recovered judgment in the sum of $130,911.57 and execution issued upon said judgment was returned unsatisfied. Thereafter plaintiffs began another action against the corporation to recover the rent and taxes which resulted in favor of the plaintiffs and against the corporation for $20,547.83 which judgment still remains unpaid. It is further alleged that before beginning these actions plaintiffs made demand upon the defendant for the payment of the sums due under the leases and bond which he refused to pay and that the corporation has no property or means with which to pay the judgments. It is then set forth that there are no creditors of the corporation other than the plaintiffs and defendant, who claims that there is $70,000 due him from the corporation. It is then alleged that the moneys and the value of the properties of the corporation taken by the defendant and wasted by him exceed in amount any just, debts or obligations of the corporation to him, but the true amount of such excess cannot be ascertained. It is then averred that the plaintiffs have no adequate remedy at law for the relief to which they are entitled. The prayer for relief is as follows: " Wherefore, plaintiffs demand judgment compelling the defendant Ratkowsky to pay the two said judgments recovered against the corporation with interest due thereon and for such other and further relief as may be just and equitable with the costs and disbursements of this action."

At the close of the plaintiffs' case the court indicated its view that the complaint and proofs showed that this was an action for damages and was triable before a jury. The court said it would allow the case to proceed as an equitable action if the complaint was amended so as to show that the prayer for relief was for an accounting. That suggestion the plaintiffs' counsel refused to accept, saying: " I refuse to amend. As I understand it we are asked to amend our prayer so as to

demand an accounting and with the understanding that we are limited to such amounts as may be found due us on the accounting."

As I understand plaintiffs' present contention it is that they established upon the trial certain facts, which as I view them fall within four categories: *First*, that the R. A. S. Realty Company was a mere dummy or shell for Ratkowsky's fraudulent purposes and to evade personal responsibility; *second*, that although he promised to execute a formal guaranty of the corporation's obligations to plaintiffs, he evaded so doing, but failed to repudiate his obligation and is estopped from denying it now; *third*, that he failed in his obligation as a director and officer of the corporation and was guilty of fraudulent acts towards it causing loss; and *fourth*, that he held property belonging to the corporation and to its creditors.

When the plaintiffs' contentions are analyzed, they reduce themselves to this sole claim of equitable jurisdiction: That upon the facts and circumstances disclosed by the record a court of equity may take jurisdiction, look through the corporate entity, and deal with the defendant as the real debtor and subject his property to the plaintiffs' judgment against his corporation. I am unable to find anything in the case which justifies such a judgment. This action is brought to recover a sum of money only, *i. e.*, it is brought to compel the defendant to pay the amount of judgments against the corporation of which he was a stockholder and of which he ultimately acquired all the stock. In this complaint are mingled allegations appropriate to a number of causes of action at law. Whether any complete cause of action whatever at law is therein stated we are not called upon now to decide. Every act of the defendant of which the plaintiffs complain is therein set forth, many of which bear no possible relationship to each other and the causes of action based upon which must of necessity be different in character. If defendant was guilty of fraud whereby plaintiffs suffered damage, that would be one cause of action. If he induced plaintiffs to act to their financial loss by representations as to what he would do in the future, having no intention of carrying out that agreement, wherefore plaintiffs claim he should be estopped

from denying that he had executed the agreement which he promised to fulfill, that would be another theory of liability. If he fraudulently took possession of the assets of the corporation and used them for his own purposes to the detriment of its creditors, he would be liable in an action for an accounting. If he induced plaintiffs to forego $1,250 of the rent due them by a fraudulent representation, they would have the right to recover that sum. But plaintiffs relied upon none of these theories of recovery, expressly repudiating the idea that their action was for an accounting and refusing to amend or to ask for that relief, upon doing which the court announced that it would keep control of the action as one in equity. They stand upon the proposition that because the defendant in effect treated the property of the corporation as his own he personally is liable to pay the amount of the judgment recovered against it. I am unable to see upon what theory such an action can be maintained and certainly whatever else may be said as to it it clearly is an attempt to state a cause of action at law, for the sole relief which could be granted would be to direct the defendant to pay these judgments. There is no suggestion that the defendant is insolvent or that he could not pay a judgment recovered against him in an action at law, even for the aggregate of these judgments held by the plaintiffs against the corporation. While there have been cases in which the courts have disregarded the corporate entity in order to prevent fraud or injustice, there is no case which has ever held that an existing corporation against which judgments have been recovered can be treated as non-existent in order to compel an individual to pay those judgments recovered in actions to which he was not a party. Whatever may be its status as an action at law, I think this action has none in equity, and I believe that the justice at Special Term was correct in declining to proceed further with the trial and in sending the case back to the trial calendar to be disposed of.

I, therefore, favor the affirmance of the order appealed from, with ten dollars costs and disbursements.

SMITH, J., concurred.

Order reversed, with ten dollars costs and disbursements, and action remitted to Special Term for trial.