ALMIRALL & COMPANY, INC., Respondent, *v.* JOHN H. MCCLEMENT, Trading as J. H. MCCLEMENT & COMPANY, and WILLIAM M. GREVE, Appellants, Impleaded with JAMES E. GAFFNEY and Others, Defendants.

First Department, December 14, 1923.

Corporations — action against stockholders to recover on corporation contract — action is based on theory that corporation was created for fraudulent purpose of protecting individual defendants against liability on contracts — corporate entity can be disregarded only on ground of estoppel — action is not in equity — complaint does not state cause of action — fact that some of defendants did not appeal is immaterial.

In an action to charge the individual defendants with liability on a contract between the plaintiff and the corporation defendant, of which the individual defendants were stockholders and bondholders, which action is based on the theory that the corporation is a mere fraudulent device or scheme to protect the individual defendants from liability on their contracts, the complaint does not state a cause of action which alleges in substance that certain of the individual defendants were awarded a contract by the city of New York for garbage disposal; that prior to the award of the contract those defendants and others engaged in the banking business in New York city entered into a promoters' contract providing for the incorporation of a corporation for the express purpose of taking over the con-

tract if awarded to the defendants who submitted a bid; that said promoters' contract provided for the issuance of $1,000,000 of bonds secured by first mortgage, which were to be sold to bankers for a certain sum, and provided for the issuance of $800,000 of bonds secured by a second mortgage which were to be sold at par for cash, and provided, also, for the kind of stock to be issued, the appointment of voting trustees, and the personnel of the board of directors which was to manage the corporation while the bonds were outstanding; that the corporation was duly organized and the garbage disposal contract was assigned to and accepted by it; that the voting trust agreement was executed; that a trust mortgage was executed to secure the payment of the bonds and was duly recorded; that thereafter the plaintiff entered into the contract in question with said corporation and later the corporation became insolvent, its mortgaged property was sold in foreclosure proceedings and the proceeds used in the payment of the bonds which were held in part, at least, by the individual defendants; and that the theory of the action is one in equity based upon the alleged rule that the courts will disregard the cloak of corporate entity when it is used as an instrumentality of fraud.

This action, although claimed to be one in equity, cannot be so regarded, since it was instituted by the plaintiff solely on its own behalf, does not seek to restore moneys fraudulently diverted from the corporation and have a proper distribution made, seeks a money judgment only against certain individuals, asks no relief against the corporation defendant, and does not allege that the plaintiff has no adequate remedy at law.

The plaintiff fails to allege any facts amounting to equitable estoppel on the part of the individual defendants which is an essential element of an action against stockholders to charge them with liability on a corporate contract on the theory that individual liability cannot be evaded by means of a corporate entity fraudulently concocted for the express purpose of evading that liability.

According to the allegations of the complaint, the plaintiff entered into a contract with a corporation duly organized and existing and did not extend any credit to the individual defendants, and, in fact, did not know of the existence of one of them until three years after the contract was executed, and executed the contract with constructive notice of the existence of the mortgage securing the bonds and of the promoters' contract and also of the assignment of the city contract by the individual defendants to the corporation.

The fact that certain of the individual defendants have not appealed from the order denying the motion to dismiss the complaint is not material.

SEPARATE APPEALS by the defendants, John H. McClement and another, from two orders of the Supreme Court, each made at the New York Special Term and entered in the office of the clerk of the county of New York on the 15th day of November, 1922, denying their respective motions to dismiss the complaint, made upon the ground that the complaint does not state facts sufficient to constitute a cause of action.

*Davison & Underhill* [*Alfred T. Davison* of counsel; *James K. Foster* with him on the brief], for the appellants.

*Brodek & Raphael* [*Charles A. Brodek* of counsel], for the respondent.

21

MERRELL, J.:

These appeals come before this court under circumstances deserving brief comment before discussing the merits thereof. It appears from the opinion of the learned justice presiding at Special Term when the orders appealed from were granted that some time prior to the making of the motions resulting in the orders now before us, a similar motion made on behalf of the other individual defendants had been denied by another justice. In granting the order appealed from herein the court held that the defendant Greve, one of the appellants here, was in exactly the same position as the other defendants whose motion had been theretofore denied, and that it would be improper to grant Greve relief which had been denied to his codefendants and partners. While the court held the position of McClement, the other appellant herein, to be different from that of all the other individual defendants, it felt that if the case of *Quaid* v. *Ratkowsky* (183 App. Div. 428) was applicable to the position of the other individual defendants, it was equally applicable to that of McClement, and it would be impossible to determine the motion favorably to the latter without destroying the basis upon which the former decision rested. The court, therefore, felt constrained to deny the motion upon the authority of the earlier decision. Thus the present motions have not been considered upon their merits by the justice deciding them. In denying the former motion the court merely stated: " Motion for judgment dismissing the complaint is denied. (See *Quaid* v. *Ratkowsky*, 183 App. Div. 428; affd., 224 N. Y. 624.)"

Plaintiff contracted with the defendant corporation, under an agreement in writing entered into with it, to furnish and install certain piping in a garbage disposal plant owned by the corporation on Staten Island, which it was erecting to enable it to carry out a contract entered into between the city of New York and the copartnership of Gaffney, Gahagan & Van Etten (composed of all the individual defendants except McClement), and assigned by this firm to the corporation.

Pursuant to this contract plaintiff furnished and installed material of the agreed value of about $180,000, of which amount the defendant corporation paid about $108,000, leaving a balance unpaid of $71,491.73. Plaintiff filed a mechanics' lien against the property for that amount, but thereafter, by reason of a Federal equity receivership and proceedings to foreclose a mortgage constituting a prior lien on the premises, plaintiff has never been paid anything further and the assets of the corporation have been entirely consumed. Plaintiff brings the present action to hold the stockholders of the corporation individually liable for the debt of

the corporation claiming that the corporate entity was fraudulently used as a shield for the fraudulent operation of the individuals, and that the property was in fact theirs and that the acts and obligations of the corporation were those of the individuals.

The facts set forth in the complaint are of course admitted for the purposes of these appeals. In order to present a little clearer picture than may be obtained from a perusal of that rather verbose pleading, the facts therein alleged will be set forth in chronological order rather than in that adopted by the pleader.

After alleging the incorporation of plaintiff, that defendant McClement was from April, 1916, to November, 1917, engaged in the banking business in New York city under the name of J. H. McClement & Co., and that the defendants Gaffney, Gahagan, Van Etten, Davis and Greve were at all times mentioned therein copartners doing business under the firm name of Gaffney, Gahagan & Van Etten, the complaint sets forth the following facts which must be deemed to be true:

On December 22, 1915, the city of New York advertised for bids for a contract for garbage disposal for a five-year period. The firm of Gaffney, Gahagan & Van Etten submitted a bid which was accepted by the city and a contract was entered into between the city acting through its commissioner of street cleaning and the copartnership on April 10, 1916.

On April 1, 1916, the individuals composing the copartnership entered into a written agreement whereby the copartnership members, therein termed the "bidders," agreed with McClement & Co. that, in case they were awarded the garbage disposal contract by the city of New York, they (the bidders) would form a corporation in which such contract should be vested. It was further agreed therein that the corporation was to issue $1,000,000 of bonds, secured by a first mortgage upon all its property, which bonds were to be sold to McClement & Co. for $950,000 and also was to issue an additional $800,000 of bonds to be sold only at par for cash, secured by a second mortgage lien upon the corporate properties. The corporate stock was to consist of common stock only, fully paid and non-assessable, no dividends to be paid thereon until both bond issues were fully paid for and said stock to be subject only to said two bond issues. The second bond issue was required to be subscribed and paid for in full in cash at par before McClement & Co. could be called upon to take and pay for any of the first issue. McClement & Co., or a trust company to be designated by them, were to become voting trustees of sufficient stock to enable them to elect directors until both bond issues were paid. Two-thirds of the directors were to be persons designated

by the bankers and one-third those designated by the holders of the second bond issue. Greve was permitted to participate with McClement & Co. in the purchase of bonds and stock to an amount to be fixed by the latter, notwithstanding any interest he had in the bid. Other minor provisions are contained therein which are not now important, including a time limit for the securing of the contract from the city, and sale of the second issue of bonds, which time was extended by the supplemental agreement as was the time of payment by McClement & Co. for the first bond issue. These agreements were assigned by the bidders to the defendant corporation.

On April 28, 1916, the corporation was organized as agreed under the name of Metropolitan By-Products Company, which will hereinafter be referred to as "the corporation" or "the defendant company." On June 5, 1916, this corporation acquired by conveyance the property comprising the garbage disposal plant.

On May 6, 1916, the garbage disposal contract between the city and Gaffney, Gahagan & Van Etten was assigned to and accepted by the corporation.

On June 5, 1916, the voting trust agreement provided for in the so-called banker's agreement was executed by the individual defendants herein as holders of the stock of the defendant corporation. The agreement was signed on behalf of the partnership, as such, as holder of 720 shares of stock, by the defendants Van Etten and Greve as holders of a like amount each, by the defendants Gaffney and Davis as holders of 360 shares each and by McClement & Co. as holders of 1,920 shares, a total of 4,800 shares. By said instrument the said shareholders agreed to transfer their stock to the Title Guarantee and Trust Company as trustee to hold until the first lien mortgage bonds were paid, and to vote for directors of the corporation in such a manner that two-thirds thereof should be persons designated by McClement & Co. (who subscribed for all the first lien bonds) and the remaining one-third persons designated by the holders of the second lien bonds or by a majority thereof. The agreement contains the usual provisions for new stockholders becoming parties to the agreement, issuance of receipts, returns of stock and payment of dividends, etc.

On July 2, 1916, the defendant corporation executed to the Title Guarantee and Trust Company as trustee its mortgage upon all its real and personal property, which mortgage was recorded in Richmond county on September 20, 1916. This mortgage specifically mentioned the contract between the bidders and the city, and the "bankers' agreement" as two of the properties covered by and pledged under the said mortgage.

On November 16, 1916, plaintiff entered into its contract with the defendant corporation for the furnishing and erecting of the piping required for the corporation's plant in Richmond county, for which the latter agreed to pay $153,900. Extra work agreed upon brought the value of the material and services up to about $180,000, of which $71,491.73 has not been paid.

On November 19, 1917, a bill in equity was filed in the Federal courts for the protection of the rights and equities of the various creditors, and the court immediately appointed one Moffett and the defendant Van Etten as receivers of all the properties, real or personal, of the defendant company. Both receivers qualified but thereafter Van Etten resigned.

On December 1, 1917, plaintiff duly filed in the office of the clerk of Richmond county a mechanic's lien for the amount of its unpaid claim, viz., $71,491.73, which lien was duly docketed on that day.

On September 17, 1918, Moffett, the receiver, asked and obtained leave to discontinue the business of the defendant corporation.

On March 1, 1919, pursuant to leave granted by the Federal court, the Title Guarantee and Trust Company commenced proceedings to foreclose its mortgage. The property was subsequently sold for $892,000. By the final decrees entered therein it was adjudged that the corporation was insolvent and was so at the time the equity action was instituted, and that it was unable to pay any of its debts except a small proportion of its first mortgage bonds and a small proportion of its so-called preferred notes (probably representing moneys borrowed by the receiver, though not so alleged in complaint).

With these chronological events in mind, the remaining allegations of the complaint will be considered without repeating at length any of the foregoing matters.

It was alleged that the defendant corporation was formed pursuant to the " bankers' agreement " and that the $1,000,000 bonds were issued and became a first lien upon all the corporation's property and that the second lien bonds were likewise issued.

The certificate of incorporation of the defendant corporation provided for an issuance of 4,800 shares of common stock of no par value; that the corporate assets and funds, in case of dissolution or liquidation after payment of debts, should be distributed among holders of such stock; that the amount of capital with which the corporation was to carry on business was $480,000, and its purposes were stated to be, *inter alia,* to carry out contracts with any corporation private or municipal and to erect or equip any plant required for such purposes.

It is alleged upon informtion and belief that the said $480,000 was " never paid in or contributed nor was any capital ever paid in or contributed to said defendant company;" and that the corporation was a mere title holder of the city contract and organized by the individual defendants to carry out and perform said contract.

It was further alleged in the complaint that all of the stock of the defendant company was issued to the individual defendants or their assigns or designees. It is therein alleged that the bankers' agreement, the voting trust agreement, the execution and delivery of the first lien bonds and the first mortgage, and the issuance and delivery of all the stock, were part of a fraudulent scheme whereby the individual defendants and their assignees should obtain the entire capital stock of the defendant company, control of its board of directors, irrespective of stock ownership and additional control, rights and security as alleged creditors and holders of the mortgage bonds, against subsequent owners of stock, and that that scheme was fully executed and carried out by the defendants in fraud of the rights of subsequent creditors, including plaintiff.

Paragraph 14 of the complaint then sums up the charges of fraud made against these individual defendants. It is alleged that the acquisition of the bonds and stock of the corporation was not the acquisition or purchase of stock and bonds in an organized and going corporation, but that they were acquired by agreements made prior to its incorporation, to wit, the " bankers' agreement " and the voting trust agreement; that all the risks and hazards of the business were thrown upon those subsequently dealing with the corporation, while the individual defendants were to reap all possible gain through their stock and bond ownership and to be secured against loss by the mortgage if the enterprise proved unprofitable; that the corporation was a mere shield fraudulently devised by defendants to relieve them of liability to plaintiff and others furnishing labor and materials to construct the plant of the defendant company or otherwise becoming creditors in connection with the enterprise of the individual defendants under the city garbage contract; that said enterprise and all operations nominally carried on under the name of the corporation were for the account and benefit of the individual defendants and at their risk and credit; that they conspired to and did enter into and carry out the fraudulent scheme and device of creating an alleged corporate entity as therein set forth as a barrier between themselves and the persons, including plaintiff, who subsequently furnished labor and materials to construct and maintain the plant of said defendant company.

It is further alleged in said complaint that upon the foreclosure

sale of the plant and properties of the defendant corporation, the same were purchased by someone acting in the interest of the individual defendants, and that the entire proceeds of such sale were awarded to defendants and their successors in interest holding the first mortgage bonds.

Plaintiff also alleges that he had no knowledge of the bankers' agreement or the voting trust agreement or of the mortgage until 1919 when said action was tried in the United States District Court for the foreclosure of said trust mortgage.

It is further alleged that the balance of plaintiff's claim, $71,491.73, is wholly unpaid and said defendant is wholly stripped of its assets and unable to respond to any claim. It is alleged that by reason of the premises the individual defendants are indebted to plaintiff in the said sum of $71,491.73. The plaintiff prays for a money judgment for that sum against the individual defendants and for no other relief.

I am of the opinion that the chronological summary of the transactions involved as above detailed fails to state a cause of action. Do the allegations of fraud found in the complaint when stripped of the legal conclusions therein contained save the pleading? It is perfectly clear that the cause of action here sought to be alleged has nothing in common with *Quaid* v. *Ratkowsky* (183 App. Div. 428; affd., 224 N. Y. 624) unless the principle of that case is broad enough to cover every transaction wherein individuals form a corporation and conduct business through it rather than to carry on a speculative enterprise in their individual names and pledge their personal credit thereto.

Respondent, in its brief, disclaims any intention of predicating its cause of action upon the theory that the defendants by failure to pay for their stock when issued are liable for unpaid subscriptions, or for commencing business without the requisite capital being paid in. Neither is it seeking to hold the incorporators liable as partners by reason of a defect in the organization of the corporation. It states unequivocally that it seeks to sustain the complaint as one *in equity* based upon " those modern authorities which disregard the cloak of corporate entity when it is used as an instrumentality of fraud."

Respondent contends this action is one in equity. It sues solely on its own behalf, not on behalf of other creditors similarly situated. It does not seek to restore moneys fraudulently diverted from the corporation and have a proper distribution made. It seeks a money judgment only, against certain individuals, alleging that by reason of certain acts they are legally liable for a specified sum of money. The corporation is made a party, but no relief is asked for

it or against it.   It is not averred that plaintiff has no adequate remedy at law.   No executed instruments are to be set aside nor any trust impressed or declared.   There is a total lack of any appeal for equitable aid.   A mere money judgment is sought upon grounds not cognizable in an action at law.

A survey of the allegations seeking to establish fraud discloses a flood of conclusions and a corresponding dearth of facts. Characterizing an act as " illegal " or " fraudulent " or an agreement as a " conspiracy " does not alter their legal effect.   Such allegations are mere conclusions.   (*Carns* v. *Bassick*, 187 App. Div. 280; *Kent* v. *Lake Superior Canal Co.*, 144 U. S. 75, 91.)

Inasmuch as *Quaid* v. *Ratkowsky* (183 App. Div. 428) is relied upon as authority for upholding the complaint herein, and as this court in that case enumerated the factors which induced the decision therein, it will be helpful to set them forth here and ascertain which, if any, are present in the case at bar.   In that case plaintiffs were *judgment creditors* of the corporation, all of the stock of which was held by the defendant.   The relief sought was to compel the defendant to pay the judgments recovered by the plaintiffs against the corporation.   It is stated at the outset of the opinion in that case that upholding the right of action there did not involve any departure from the well-settled rule that mere ownership of all the stock of a corporation did not subject such owner to liability for debts of the corporation, but merely involved recognition of the principle that, in equity, liability may be incurred *founded upon estoppel*, and upon the right of a court of equity to refuse to permit a mere corporate entity, found to be a sham, to be used as an instrument of fraud.   The facts there alleged, he stated, would, if proved, support the following findings:

1.  That the corporation was a mere title holder of the defendant's property for defendant's fraudulent purposes.

2.  That the defendant took and used the whole income from the properties, mingled it with his own funds, and operated and managed the properties as his private properties.

(In the case at bar there is no suggestion but that the corporation was the actual as well as the record owner of the property and there is no allegation that the defendants ever exercised any control over it.)

3.  That the defendant held himself out to plaintiffs as the real owner of the corporation, and assured plaintiffs that his private property stood back of it, obtaining credit for the corporation in reliance upon his personal guaranty of payment and his assurance that the corporation's obligations and his were one and the same.

4. That plaintiffs extended credit to the defendant only and not to the corporation.

5. That defendant evaded giving a written guaranty, but failed to repudiate his obligation and acquiesced in plaintiffs' reliance thereon.

6. That defendant filed no annual corporate reports, kept no corporate minutes and ignored all corporate requirements for the protection of creditors.

(In the case at bar there is no element of estoppel or fraudulent representations, or any allegations of dealings had with the corporation in reliance upon the credit of the individuals. Nor are there any allegations of fact showing that the corporate affairs were not regularly and properly conducted.)

7. That defendant fraudulently caused to be transferred to himself all property of value of the corporation in order to render it judgment proof.

8. That he concealed from plaintiffs such transfers, and also large sums of money which he took from the corporation.

The chief factor thus relied upon in Quaid v. Ratkowsky (supra), was estoppel. A brief summary of what was actually decided there might well be expressed as follows: Where a liability is fully established upon an equitable estoppel, it will not be permitted to be destroyed or evaded by means of a corporate entity fraudulently concocted for the purpose of evading that liability.

In the case at bar it is alleged that the corporate entity was intended as a shield, but the essential element of estoppel is lacking. Not only do the facts alleged fail to establish estoppel, but they affirmatively establish its non-existence. Plaintiff knew it was dealing with a corporation. Its contract was in writing, made with the corporation. It extended no credit to the individual defendants. It did not know of McClement's existence until three years thereafter. It had constructive notice of the mortgage securing the $1,000,000 bond issue. This mortgage recited that both the city contract and the banker's agreement were subject to the mortgage. The latter agreement provided for the voting trust agreement, the issue of stock and the two bond issues, and control of the directorate by holders of the bonds. The assignment of the city contract was a matter of public record, and as the plaintiff must have relied upon the contract in extending credit, it knew that it was the sole property of the corporation.

It is clear that plaintiff herein has not pleaded any facts that would support the findings in the Quaid case above enumerated numbered 3, 4, 5 and 6. No basis for an estoppel is suggested. There is no claim here that the defendants used any of the income

from the properties as their own, or dealt with the property as their own. There is some slight room for argument that the facts here alleged would support findings numbered 1, 2, 7 and 8.

It is charged here and admitted, except so far as the charges are conclusions:

1. That the corporation was a mere title holder of the city contract.

2. That the banker's agreement, voting trust agreement, the execution and delivery of the first mortgage bonds, and the issue of the stock were part of a fraudulent scheme to enable defendants to own all stock, control the board of directors and obtain security as creditors over subsequent creditors.

3. That the acquisition of the stock and bonds was by a prearranged agreement, effected prior to the organization of the corporation.

4. That all the risks and hazards of the business were thrown upon persons dealing therewith, while defendants could reap all possible gain and be secure against loss if the enterprise proved unprofitable.

5. That the corporation was a shield to relieve defendants of liability for the debts of the enterprise.

6. That defendants conspired to and did carry out the fraudulent scheme of creating the corporate entity as a barrier between themselves and the creditors of the corporation.

7. That the defendants have acquired, through a dummy, the properties of the corporation.

8. That the corporation has been stripped of all its assets and plaintiff remains unpaid.

If the acts of the defendants were legal, the fact that they were done to accomplish an injury to plaintiff or to others does not make them illegal or actionable. (*Dalury* v. *Rezinas*, 183 App. Div. 456; affd., 229 N. Y. 513.)

The eight charges above set forth are mainly conclusions. The effect of such charges as constitute allegations of fact is diminished by the allegations elsewhere in the complaint setting forth the details thereof. Unless the conclusions are supported by the pleaded facts, the complaint must fail. The actual transactions pleaded are these:

Having a contract with the city, defendants assigned it to a corporation organized for the purpose of carrying out that contract. The corporation executed a mortgage upon its entire assets to secure the two bond issues. That mortgage, it appears from the allegations of the complaint, was a matter of public record at the time plaintiff entered into its contract with the corporation. The

bond issue was arranged and provided for in a promoter's agreement prior to incorporation. Plaintiff cannot complain of this, for it was charged with notice of the issuance of these bonds by the recorded mortgage. The stock was trusteed pursuant to the promoter's agreement, and control of the directorate by the holders of the bonds was likewise prearranged.

Voting trusts in favor of creditors advancing moneys to a corporation are too common to be for one moment considered illegal *per se*. It is nowhere in the complaint alleged that any acts of the directors brought about the situation of which plaintiff complained. Calling it illegal does not make it so. Nothing is alleged that shows improper management or manipulation, or that the method of transacting the corporate affairs brought about the result of which complaint is made. The Federal receivership is not claimed to have been collusive or fraudulent or improperly caused, and is not here attacked. The foreclosure action was a legal proceeding regularly taken to enforce a lien of which the plaintiff had knowledge when it advanced credit to the corporation.

The several charges above specified may be disposed of as follows:

1. It is not illegal *per se* to conduct a risky enterprise through a corporation to evade personal liability. That is frequently one of the main reasons for incorporating, and in the absence of fraud, a legitimate object. So far as plaintiff knew when it contracted, it was dealing solely with a corporate enterprise and credit was given solely to the corporation and was in nowise induced by reason of the personal responsibility of the defendants.

2. The promoter's agreement was not illegal *per se*, and no facts are alleged showing any illegality therein, or that its execution and the performance thereof in any way affected plaintiff's rights or worked any injury thereto.

3. The fact that it was agreed in advance how the stock and bonds were to be distributed is not fraudulent or illegal *if* they were distributed according to law, and the contrary is not charged or shown. If the stock was issued without payment therefor, certain statutory penalties ensue, but plaintiff expressly disclaims any rights under such statutes.

4. Persons dealing with corporations must look to the corporate assets and not to the individual stockholders. It is not alleged that defendants wrongfully received one penny of the profits of the enterprise, save only that the proceeds of the foreclosure sale were paid to the holders of the mortgage bonds. These bondholders were prior lienors, of whose superior rights plaintiff was charged with notice. The bonds were to be issued for cash, and

it is to be presumed that they were regularly issued. (*Gilbert Paper Co.* v. *Prankard*, 204 App. Div. 83.) The proceeds were paid to the bondholders pursuant to judicial decree, and there is no charge of irregularity in such proceedings.

5. The corporation, as above shown, was legally used as a shield to relieve defendants of personal liability, *unless some fraud is shown.* The mere use of a corporate entity is not a fraud *per se.*

6. That defendants " conspired " to do acts lawful in themselves is not an allegation of a material fact. It adds nothing to the complaint, and unless the acts charged constitute a cause of action without the claim of conspiracy, they are not saved by that claim. (*Gilbert Paper Co.* v. *Prankard, supra.*) That the acts were " unlawful " is, a conclusion, in the absence of facts showing illegality.

7. Plaintiff alleges that the defendants' dummy purchased the property upon a judicial sale thereof. No claim is made that the foreclosure proceedings were collusive, or that the price was inadequate. Everything that was done could be lawfully done. Charging that it was done unlawfully or pursuant to conspiracy adds nothing to the complaint. (*Dalury* v. *Rezinas, supra.*)

8. The allegation that the corporation is stripped of its assets is merely a summary of the final result of all the preceding acts charged, none of which were shown to be illegal. If the means were proper, the result cannot be held to be improper.

The chief element in *Quaid* v. *Ratkowsky* (*supra*), namely, estoppel, is absent here, and I fail to see any cause of action either at law or in equity.

Nor need we concern ourselves with the position of the other defendants caused by their failure to appeal. Indeed, for all that appears they may have taken their appeal and held it in abeyance. If a reversal is had herein, they may obtain leave to renew their motion or to reargue. They may be entitled to move for judgment on the pleadings if they have answered. If this court holds the complaint to be bad, as I believe it must, plaintiff could not go to trial thereon even against the other defendants, for as a consequence of this decision a dismissal upon the trial would follow as a matter of course. Any attempt to amend would give all the defendants the right to make such motion in respect to the pleadings as they might be advised.

The authorities, other than the case of *Quaid* v. *Ratkowsky*, cited by respondent to sustain the orders appealed from are in the main also founded upon estoppel, and none go so far as the *Quaid* case.

Each of the orders appealed from should be reversed, with ten

dollars costs and disbursements to each of the appellants, and the motions of the appealing defendants granted, with ten dollars costs as to each against the plaintiff, respondent, with leave to the plaintiff to serve an amended complaint upon payment of said costs.

CLARKE, P. J., DOWLING, SMITH and McAVOY, JJ., concur.

In each case: Order reversed, with ten dollars costs and disbursements to the said appellant, and motion granted, with ten dollars costs, with leave to plaintiff to serve an amended complaint within twenty days from service of order upon payment of said costs.