BENDAN HOLDING CORPORATION, Respondent, *v.* HAROLD RODNER, Appellant.

Second Department, July 3, 1934.

*Henry Mayer*, for the appellant.

*William A. Thomas*, for the respondent.

HAGARTY, J. One Philip B. Tatarsky was the owner of a bond secured by a mortgage on a parcel of real estate in the town of Linden, N. J. On the 7th day of April, 1930, Tatarsky instituted an action to foreclose his mortgage. Tatarsky died a resident of the State of New York on the 18th of June of that year, leaving a will which was admitted to probate by the Surrogate's Court of Kings county, wherein two men named Tarley, one David and the other Benjamin, were appointed executors and duly qualified as such. An exemplified copy of the will was filed with the clerk of the Prerogative Court of the State of New Jersey, and the executors were substituted in the action for the deceased plaintiff and prosecuted the foreclosure action to judgment and sale. On the sale the property was bought in by the executors. Thereafter the defendant in this action purchased the property from the executors, giving back a purchase-money mortgage on the property to secure the payment of the bond, which bond is the subject of this action.

Although in form the purchase was from a man named Samuel Ruderman, to whom the Tarleys conveyed the property without consideration, it is not seriously disputed that Ruderman was a dummy acting for the executors and, therefore, for the estate of the decedent. Even if that fact were denied, the legal effect of the transaction, at least in so far as the question before us is concerned, would be that the dealings were with the executors, since the proof is that the conveyance by the executors to Ruderman was without consideration.

On the closing of the title resulting in the conveyance to this defendant, the question of the Federal and State tax on the estate of Tatarsky, deceased, was raised by the title company employed by the defendant to insure the title. Thereupon, and on the 9th day of June, 1931, an agreement was entered into between this defendant and the Tarleys, as follows:

" WHEREAS, the said Samuel Ruderman has conveyed the said premises to Harold Rodner; now in consideration of the sum of One ($1.00) Dollar, and other good and valuable consideration,

and also for the purpose of inducing Harold Rodner to take title to the premises described in the deed, the parties of the first part hereby agree that they will individually and collectively pay the Federal and State Tax on the estate of Philip B. Tatarsky, deceased, within one year from date hereof.

" It is understood and agreed that in the event that the transfer tax is not paid within one year from date hereof, the party of the second part shall have the right to exercise the option of withholding payment of principal and interest on the mortgage hereinbefore described."

The agreement is signed by the Tarleys individually, and not as executors. Thereafter Ruderman, the nominee, assigned the bond and mortgage to this plaintiff, which brought its action on the bond to recover an unpaid balance, entirely ignoring its rights, if any, in the mortgage.

Facts alleged in the answer are to the effect that, unbeknown to the defendant, the executors caused the bond and mortgage to be assigned, not to themselves, but to the plaintiff, which is a corporation " owned by said executors of record or beneficially, and that the principal officers and directors of said corporation were and are said executors." A further allegation is to the effect that there are outstanding as liens against *said premises* an unpaid Federal estate tax against the estate of said Philip B. Tatarsky and an unpaid inheritance tax of the State of New Jersey, both uncertain in amount; that because of those outstanding taxes defendant, at the time of the closing of the contract to purchase, refused to take title " unless the same could be made free and clear of such liens;" whereupon the agreement to which I have referred was executed by the parties. It is further alleged that the bond was reduced by payments to the sum of $950, which figures were accepted by the plaintiff for the purpose of entering its judgment, and as to that there could be no question.

The counterclaim is based on the loss of a sale of the property by reason of the incumbrances stated, and the further allegation that the premises had depreciated in value below the purchase price contemplated in the last-mentioned contract by $3,000, which is the damage sought to be recovered under the counterclaim.

In the transfer tax proceedings in the State of New York the facts as set forth in an affidavit by counsel for the defendant are that under the Tatarsky will substantial bequests were made and the residue was left to the Tarleys. Counsel says that he has examined the papers and that it appears from the appraiser's report that a gross estate of $72,000 was left, but that, in addition to the $72,000, the schedules include eleven mortgages which were

owned by the testator, aggregating $50,653, and which were characterized as having no value largely because of foreclosures which took place after Tatarsky's death, many as late as 1932.

The conclusion which I have reached is that this defendant is entitled to a trial, not, however, on the theory adopted by him at Special Term and urged on this appeal. Defendant's position is that the real estate in New Jersey on which the decedent held a mortgage during his lifetime, and which was subsequently bought in by the executors on the foreclosure sale, was realty in the estate of the decedent and, as such, subject to the liens of the Federal and State tax. In the absence of authority supporting that doctrine, I cannot subscribe to it. At the time of the decedent's death it was an asset of the estate in the form of personal property and taxable as such. No subsequent act or procedure by the executors could change the nature of the asset at the time of decedent's death. To be specific, the continuance of the foreclosure action and the subsequent purchase of the property did not so relate back to the date of the decedent's death as to result in a conversion as of that date. Therefore, although the distinction may be immaterial for the purposes of this litigation, I shall assume that it was personal property for the purposes of transfer and inheritance tax proceedings. As personal property it was, and still is, liable to taxation by the Federal government in a proper proceeding, and possibly by the State of New Jersey. There is no claim that the Federal tax was ever paid or that proceedings under the Federal statute were ever instituted, since that claim is not urged.

The United States Internal Revenue Act (U. S. Code [Compact ed.], tit. 26, § 1115), which was in force at the time of the death of Tatarsky, provides that " Unless the tax is sooner paid in full, it shall be a lien for ten years upon the gross estate of the decedent, except that such part of the gross estate as is used for the payment of charges against the estate and expenses of its administration, allowed by any court having jurisdiction thereof, shall be divested of such lien."

Concerning that provision of law, it was said in *Heymann* v. *Viane* (252 N. Y. 159) that " this statute differs from the State Tax Law in that the lien is upon the gross estate and not on each interest bequeathed. * * * The statutory lien is removed only as to assets needed to pay charges against the estate and administration expenses ' allowed by any court having jurisdiction thereof.' "

If, therefore, personal property is subject to the lien under the United States Internal Revenue Act (*supra*), the agreement made between the Tarleys and the defendant is binding. The obligation

of the Tarleys under the contract is dependent upon no presumption of law. They agreed to pay the Federal and State tax within one year, failing to do which the defendant was privileged to " exercise the option of withholding payment of principal and interest on the mortgage." While there are cases to the effect that the doctrine of equitable conversion may not be relied on to subject property to taxation or to shift the lien of the tax from the real property transferable to the fund (*Matter of Sutton*, 3 App. Div. 208; affd., 149 N. Y. 618; *Matter of Swift*, 137 id. 77; *Heymann* v. *Viane, supra*, 166), the real estate in New Jersey may be subject to the tax as personal property, on the theory that it is the proceeds of the original bond and mortgage held by the decedent and taxable as would be personal property. In any event, that is a contingency which the defendant provided against by the agreement and to the terms of which this plaintiff as the assignee of the Tarleys should be held.

The fact that the corporation plaintiff is not a party to the contract is of no moment. If the plaintiff is the creature of the Tarleys, then " the corporate veil should be pierced." (See *Quaid* v. *Ratkowsky*, 183 App. Div. 428; affd., 224 N. Y. 624.) The allegation in the answer, as I have quoted it, is sufficient to present the question.

There is one question remaining, and that involves the counterclaim which rests on the breach of the agreement. But the agreement carries with it an alternative in the event of the Tarleys' failure to pay the tax, and it is limited to " the option of withholding payment of principal and interest on the mortgage." For that reason I think the counterclaim should be dismissed.

The order striking out the answer and granting summary judgment and the judgment entered thereon should be reversed on the law and the facts, with ten dollars costs and disbursements to appellant, and motion granted to the extent only of striking out the counterclaim. The order denying the motion for reargument is not appealable and the appeal from it should, therefore, be dismissed.

LAZANSKY, P. J., KAPPER, CARSWELL and TOMPKINS, JJ., concur.

Order striking out the answer and granting summary judgment, and the judgment entered thereon reversed on the law and the facts, with ten dollars costs and disbursements to appellant, and motion granted to the extent only of striking out the counterclaim. The order denying the motion for reargument is not appealable and the appeal from it is, therefore, dismissed.