CENTISCO, INC., Plaintiff, *v.* SALES REALTY CORPORATION et al., Defendants. (Action No. 1.)

J. E. J. REALTY CORP., Plaintiff, *v.* SALES REALTY CORPORATION et al., Defendants. (Action No. 2.)

Civil Court of the City of New York, Trial Term, New York County, November 2, 1966.

*Philip E. Semel* for plaintiffs. *Morton L. Portnoy* for defendants.

PATRICK J. PICARIELLO, J. Action No. 1 was instituted by plaintiff Centisco, Inc. (hereinafter referred to as Centisco), to recover the sum of $628.20, representing the balance due by way of adjustments with respect to a closing of title to real estate situated in Nassau County, wherein Centisco was the vendor, the defendant Sales Realty Corporation (hereinafter referred to as Sales) was the contract vendee and the defendant Sol Vogel was the admitted strawman at the title closing. The defendant Sydney M. Siegel (hereinafter referred to as Siegel), president and sole stockholder of Sales, became the fee owner of the subject premises at the time of closing of title thereto through defendant Vogel, strawman and Sales' nominee.

Action No. 2 was instituted by the plaintiff J. E. J. Realty Corp. (hereinafter referred to as JEJ) against the same defendants to recover the sum of $4,373.10 allegedly due it pursuant to the terms of an assignment of an agreement to pay commissions on three leases for store space in the subject premises, which said assignment was executed by and between JEJ and its assignors, real estate brokers, and which agreement to pay commissions was executed by and between JEJ's assignors and Centisco's predecessor in title.

Since both causes of action arose out of the same real estate transaction, they were tried together. At the commencement

of the trial, both causes were, on motion, ordered severed as against defendant Vogel, who became deceased shortly after the actions were commenced. The name of the defendant "Sydney M. Siegel Mfg. Co. Inc." in both actions was, on stipulation, modified to read "S. M. Siegel Management Co. Inc."

Included in the general denials interposed by the defendants in both actions were two affirmative defenses to Action No. 2. The first affirmative defense sounds in fraud in that JEJ failed to disclose a "unity of interest" between it and the owner of the property, Centisco. The second affirmative defense alleges that JEJ was not a duly licensed real estate broker at the time the cause of action arose and thus is not entitled to commissions.

It appears from the evidence that on or about July 14, 1961 Centisco, as vendor, entered into a written agreement with Sales, as vendee, for the sale of the subject real property. This agreement contained, among others, the following provision: "The within sale is amde [sic] subject to the commission agreements due in connection with the following leases. Seller agrees to pay all commissions accrued thereon to the date of closing of title. The purchaser hereby agrees to pay all commissions accruing thereunder after the date of closing of title, and to that extent purchaser hereby assumes said commission agreements, and hereby agrees to hold seller free and harmless from any and all claims, expenses, losses and damages thereunder. All broker's commissions on percentage or overage, prepaid by seller, shall be adjusted and paid by purchaser at the closing of title."

Five leases are enumerated in this paragraph, JEJ appearing as broker in three of them (Food Fair, Kresge and Sears).

It further appears from the evidence that JEJ was not the original broker who brought about the three subject leases. JEJ's assignors (Fausel-Lyon), duly licensed real estate brokers, brought about the three subject leases in 1949 and 1950. They had received commissions as brokers from Centisco's predecessor in title until the premises were sold to Centisco by the latter in 1960, at which time JEJ's assignors executed the assignment of the brokerage contracts under which JEJ is suing herein.

Defendants' second affirmative defense in Action No. 2 is therefore dismissed since it appears from the evidence that JEJ neither procured, nor acted as intermediary, nor brought about the subject leases. Since JEJ's assignors were licensed real estate brokers at the time the leases were negotiated and the lease agreements were signed, in 1949–1950, the then property owner's (Centisco's predecessor in title) agreement to pay

commissions thereon to JEJ's assignors, for handling the leasing of the store premises, was a valid, subsisting, binding and enforcible agreement.   In the case of *Schenck* v. *Sleepy Hollow Cemetery* (265 App. Div. 974), the court held that even if the real estate broker was not licensed at the time of the renewal of the leases, he would be entitled to commissions on the renewal so long as he was licensed at the time the original lease was negotiated.   (See Real Property Law, §§ 440, 440-a; also, *Latta* v. *Kilbourn,* 150 U. S. 524.)

There can be no question but that this right to future commissions under the circumstances of this case was assignable to JEJ as a chose in action.

Defendants' first affirmative defense in Action No. 2 is also dismissed on the facts and on the law.   It appears to the court that defendant Sales must have been cognizant, and must be charged with knowledge, of JEJ's claim to commissions.   Its contention that it was defrauded into believing that JEJ was a duly licensed real estate broker, when in fact it was not, merely because it failed to disclose a unity of interest between it and Centisco, is specious and tenuous, suggesting its pique and petulance in now being called upon to pay the accrued and earned commissions.   Such constitutes, in this court's opinion, *post hoc ergo propter hoc.*

The major argument advanced by the defendants Sales and Siegel is that they should not be held to account for either the adjustments or the commissions because of the assignment by Sales of all its right, title and interest in the contract of sale of the subject property to the defendant Vogel at the time of the closing of title.   The evidence clearly indicates, and the defendants admit, that Vogel was merely a dummy, a man unknown to them or either of them until the time of closing of title.   The fact its that the defendant Vogel was supplied by defendants' then attorney and that, simultaneously with the execution of the deed to the subject property by Centisco to Vogel, the latter executed and delivered his deed to the property to defendant Siegel.

It may be true that in real estate transactions when a purchase-money mortgage is to be given, it is a familiar practice for the real purchaser (Sales) to take title in a dummy, or strawman (Vogel), who will execute the mortgage so that the real purchaser may avoid personal liability for any deficiency judgment that may result in a foreclosure of the purchase-money mortgage.   Vogel was the conduit through which Sales sought to insulate itself from any such liability.   Sales may not rely upon this practice, however, to avoid its obligation to pay both

the commissions and the adjustments, accrued obligations and indebtednesses, which it assumed at the time it signed the contract of sale.

With respect to the liability of the individual defendant Siegel, it is most interesting to note that he was the named grantee in the deed executed by Vogel at the time of the closing of title. It is also significant to note that defendant Siegel is the president and sole stockholder of Sales; that defendant Siegel, after he became the owner in fee of the subject property, negotiated the adjustments with Centisco under and pursuant to the terms of the contract with Sales, which resulted in a reduction to the amount sued for; that defendant Siegel, after he became the owner of the property, supplied JEJ with the necessary information required to ascertain the amount of commissions due and owing to JEJ under the provisions of the lease agreements; that defendant Siegel, from the time he became owner of the property, paid all brokers' commissions (other than JEJ's) as provided in the contract. Indeed, on all the facts and circumstances and on the evidence, there can be no doubt but that defendant Siegel and not defendant Sales was the real party in interest, the wire-puller, Vogel his dummy, Sales his puppet.

Now, the law permits the incorporation of a business for the very purpose of escaping personal liability (*Natelson* v. *A. B. L. Holding Co.,* 260 N. Y. 233, 238; *Rapid Tr. Subway Constr. Co.* v. *City of New York,* 259 N. Y. 472, 488). Fictions of law, however, should not be permitted to work any wrong. This court appreciates that, as rules are fictions "intended for the sake of justice," they should not work injustice in any particular case, and must be moulded in furtherance of those equitable objects to promote which they were designed. So that, generally speaking, the doctrine of "piercing the corporate veil" is invoked to "prevent fraud or to achieve equity" (*International Aircraft Trading Co.* v. *Manufacturers Trust Co.,* 297 N. Y. 285, 292; see *Halsted* v. *Globe Ind. Co.,* 258 N. Y. 176, 179; *Jenkins* v. *Moyse,* 254 N. Y. 319, 324; *Quaid* v. *Ratkowsky,* 183 App. Div. 428, affd. 224 N. Y. 624).

Under all the facts and circumstances in this case, the court finds that the corporate veil (Sales) should be pierced and, in the interest of justice, a judgment should also be entered against the defendant Sydney M. Siegel, its president and sole stockholder and the owner in fee of the subject premises.

The foregoing constitutes the decision of the court pursuant to statute.

Let judgment be entered in favor of the plaintiff Centisco, Inc., against the defendants Sales Realty Corporation and

Sydney M. Siegel on Action No. 1 in the sum of $628.20, with interest from February 5, 1962 and costs; and let judgment be entered in favor of J. E. J. Realty Corp. against the defendants Sales Realty Corporation and Sydney M. Siegel in Action No. 2 in the sum of $4,373.10, with interest from October 1, 1961 and costs.

The complaints are dismissed as against the defendant S. M. Siegel Management Co. Inc. Ten days' stay.