AMPEX CORPORATION, Plaintiff-Appellee, *v.* OFFICE ELECTRONICS, INC., Defendant-Appellant.—(OEI SALES CORPORATION, Defendant.)

(No. 59478;

First District (4th Division)—November 13, 1974.

Petit and Safeblade, of Chicago (Edward Atlas, of counsel), for appellant.

Baker & McKenzie, of Chicago (Francis D. Morrissey, Michael P. Connelly, and Edward J. Zulkey, of counsel), for appellee.

Mr. JUSTICE DIERINGER delivered the opinion of the court:

This is an appeal from a judgment entered by the Circuit Court of Cook County. Plaintiff brought suit against the defendants to recover the value of magnetic tapes sold by plaintiff to both defendants. Following a jury trial, judgment was entered in favor of plaintiff against the defendants. This appeal is taken by defendant Office Electronics, Inc. Defendant OEI Sales Corporation has not appealed.

The issues presented on appeal are (1) whether the principle of "piercing the corporate veil" can be applied to impose liability upon defendant Office Electronics, Inc.; and (2) whether the trial court improperly instructed the jury and improperly refused to submit special interrogatories to the jury.

Office Electronics, Inc. (hereinafter referred to as "defendant"), has for several years been in the business of manufacturing tabulating cards and continuous business forms for use in computers. In 1961 defendant began purchasing magnetic tapes from the plaintiff, Ampex Corporation, under a franchise arrangement. In July, 1966, OEI Sales, an Illinois corporation, was formed as the marketing arm of the defendant. Robert

Houston, the chairman of the board and president of the defendant, was the treasurer of OEI Sales. Two of the three board of directors of the new corporation were officers of the defendant. OEI Sales had an initial capital of $16,000. Fifty-one percent of its stock was owned by the defendant. From the outset, OEI Sales planned to inventory $20,000 of magnetic tapes, though it had no assets other than the $16,000 in capital. The defendant advanced money to OEI Sales for its commission sales accounts. During the first half of 1967 the defendant was advancing moneys to OEI Sales amounting to approximately $14,000 per month.

Shortly after the incorporation of OEI Sales, plaintiff's sales manager met with officials of defendant and OEI Sales. At this time the plaintiff refused to grant OEI Sales corporate credit. Defendant therefore agreed to inventory $20,000 worth of tapes in its own warehouse for OEI Sales. The tapes were delivered to the defendant, and statements and invoices sent each month to the defendant. Defendant did all the billing and shipping to customers.

During the following 90 days, the defendant experienced difficulties in maintaining control of purchases of tapes made by OEI Sales from the plaintiff. To remedy this difficulty, a meeting was held in November, 1966, between officials of the three corporations. The defendant informed plaintiff and OEI Sales that verbal orders made by OEI Sales and accepted by the plaintiff had to stop, and plaintiff should ship tapes only on written purchase orders.

Notwithstanding the November meeting, plaintiff continued to accept verbal orders from OEI Sales. On March 9, 1967, a second meeting was held between officials of the three corporations. Defendant informed plaintiff and OEI Sales that it would pay for all purchases made prior to March 9, but would not be responsible for any shipments made by plaintiff after March 9, unless made upon a written purchase order of the defendant. Plaintiff agreed to such procedure. To confirm the agreement, defendant sent plaintiff a letter describing the arrangement agreed to at the meeting. Plaintiff received the letter.

Approximately 3 months after the defendant's letter of March 9, 1967, defendant sent plaintiff a check dated June 3, 1967, for $20,000. On June 7, 1967, defendant paid plaintiff another $20,000. The checks did not indicate they were paid to any specific invoice. On July 18, 1967, plaintiff sent defendant a letter requesting that defendant arrange for payment of outstanding receivables overdue. Upon receipt of the money, plaintiff was to release its credit hold on defendant. On July 20, 1967, defendant sent plaintiff a check in the amount of $22,000, and on August 2, 1967, a check for $2,250.

In February, 1969, plaintiff commenced a lawsuit against Office Elec-

tronics, Inc., and OEI Sales, alleging the defendants still owed plaintiff $49,366.33 for magnetic tapes purchased on account. Following a jury trial, judgment was entered against both defendants. Defendant Office Electronics, Inc., appeals from that judgment. OEI Sales has not appealed.

The defendant first contends the doctrine of "piercing the corporate veil" cannot be applied in the instant case, as there was a complete absence of fraud, deception or misleading on the part of the defendant. In support of its contention, the defendant relies primarily on the decision in *Superior Coal Co. v. Department of Finance* (1941), 377 Ill. 282, 290, wherein the supreme court held:

> " '* * * the courts will ignore the fiction of corporate entity only with caution, and when the circumstances justify it, and when it is used as a subterfuge to defeat public convenience, justify wrong, or perpetrate a fraud.' "

Defendant further cites numerous cases wherein the court stated that fraud, deception or misleading are essential ingredients to the doctrine of "piercing the corporate veil."

■■ We believe there was sufficient evidence to apply the doctrine of "piercing the corporate veil" in the case at bar. It is a well-established rule in Illinois that " '* * * it is sufficient in order to treat one corporation as the alter ego of another [that] there is such a unity of interest and ownership that the individuality of one corporation has ceased, and * * * the observance of the fiction of separate existence would under the circumstances sanction a fraud by promoting injustice * * *.' " (*Edwards v. Chicago & Northwestern Ry. Co.* (1967), 79 Ill.App.2d 48, 52.) In *Holland v. Joy Candy Manufacturing Corp.* (1957), 14 Ill.App.2d 531, Mrs. Edith Kanelos was president and a director of Joy Candy Manufacturing Corp. and Joy Candy Shoppes, Inc. Candy Shoppes was the retail outlet of Joy Manufacturing. During the years 1953 and 1954, plaintiff performed advertising services and sent statements covering such services to both corporations. Plaintiff subsequently sued both corporations for the price of his services. Candy Shoppes had no assets, and Joy Manufacturing defended on the theory that plaintiff performed services only for Candy Shoppes. The appellate court recognized the issue as:

> "* * * whether the separate corporate entities can be used as a shield against liability, if, under all the circumstances, it would work a fraud upon creditors dealing with them." (14 Ill.App.2d 531, 534.)

The court held:

> "We think the trial court was justified in viewing Candy Shoppes as a mere instrumentality of the other corporation, and that the

affairs of the two corporations were so managed and controlled by the same interlocking officers, directors and single stockholder, as to constitute one corporate entity in its dealings with creditors." (14 Ill.App.2d 531, 535.)

Likewise in the present case, the affairs of Office Electronics, Inc., and OEI Sales were so managed and controlled as to constitute one corporate entity. Two out of the three directors of OEI Sales were officers of the defendant; defendant owned 51% of the stock in OEI Sales; when the plaintiff refused to grant corporate credit to OEI Sales the defendant agreed to inventory $20,000 worth of tapes for the benefit of OEI Sales; defendant advanced moneys to OEI Sales for its commission sales accounts; defendant received merchandise from the plaintiff, along with monthly statements and invoices; and defendant did all the shipping and billing to customers. Further, defendant continued to pay for the verbal orders made by OEI Sales, even after the meetings between officials of the three corporations and after defendant sent plaintiff a letter detailing arrangements for doing business in the future. Under these circumstances, we believe it was necessary and correct for the trial court to pierce the corporate veil in order to promote justice.

The defendant next contends the trial court improperly instructed the jury and improperly refused to submit special interrogatories to the jury. ██ We do not agree with the defendant's contention. A review of the record indicates that each instruction given by the judge, when considered in its entirety, was clearly proper. (*DiPaolo v. Johnson* (1973), 15 Ill.App.3d 735.) The record also reveals that the trial court properly refused to submit defendant's special interrogatories to the jury. It is well settled that a special interrogatory is not proper unless it relates to one of the ultimate facts upon which the rights of the parties directly depend, and unless some answer responsive thereto would be inconsistent with some general verdict that might be returned upon the issues of the case. (*Wicks v. Cuneo-Henneberry Co.* (1926), 319 Ill. 344.) The special interrogatories submitted by the defendant did not relate to an ultimate issue of fact, and if answered favorably for the defendant, would not have been inconsistent with the general verdict.

For the reasons stated herein, the judgment of the Circuit Court of Cook County is affirmed.

Affirmed.

ADESKO, P. J., and BURMAN, J., concur.