**WALTER E. HELLER & COMPANY,**
**Plaintiff-Appellee, Cross-Appellant,**

**v.**

**VIDEO INNOVATIONS, INC.,** Susan Bruner, Charles Bruner, Karen Parisi, Angelo Samuel Parisi, John A. San Pietro, Carmela San Pietro, Adele Wise, Kenneth Wise, Video Software & Production Center, Inc., Edward Kreuter and Olympic Video Services, Inc., Defendants,

**Edward Kreuter and Olympic Video Services, Inc., Defendants-Appellants, Cross-Appellees.**

**Cal. Nos. 398, 453, Dockets 83–7568, 83–7618.**

United States Court of Appeals, Second Circuit.

Argued Nov. 14, 1983.

Decided Feb. 29, 1984.

Milton S. Zeiberg, New York City, for defendants-appellants, cross-appellees.

Mark R. Kook, New York City (Sharfman, Shanman, Poret & Siviglia, P.C., New York City, of counsel), for plaintiff-appellee, cross-appellant.

Before MANSFIELD, VAN GRAAFEILAND and HAYNSWORTH *, Circuit Judges.

* Of the U.S. Court of Appeals for the Fourth Circuit, sitting by designation.

VAN GRAAFEILAND, Circuit Judge.

Edward Kreuter and Olympic Video Services, Inc. appeal from a $167,877.99 judgment entered at the conclusion of a jury trial before Judge Brieant in the United States District Court for the Southern District of New York. We affirm.

In 1979, Walter E. Heller & Company, acting through a wholly owned and subsequently absorbed subsidiary, leased a quantity of video equipment to Video Innovations, Inc. for a term of eighty-four months at a monthly rental of $3,152. Heller obtained guarantees of payment from Video Innovations' sister corporation, Video Software & Production Center, Inc., and from officers of both companies. Shortly thereafter, the two companies consolidated their operations, and Video Software assumed Video Innovations' obligations, including the lease payments.

In 1980, Kreuter became the financial consultant of Video Software. By means of several guaranteed and collateralized personal loans to Software, Kreuter was able to gain possession and control of the company. In satisfying the indebtedness on his first loan, Kreuter purchased at a reduced price Software's premises on which he held a mortgage. He then organized a shell corporation called Olympic Video Services, Inc. and proposed that it take over Software's financially troubled business. To induce Software's officers to approve the takeover, Kreuter promised to assume all the obligations of the company and the guarantees of its officers.

When the takeover was approved, Olympic assumed the operation of Software's business, in connection with which it took possession of Heller's video equipment. Rental on the equipment was paid for several months, and then payments were discontinued. In July 1982, when the payments were six months in arrears, Heller terminated the rental, invoked the lease's rental acceleration clause, and demanded the return of its equipment. The equipment was not returned until November 1982, one month after Heller had secured an order of replevin. The recovery in this action was for delinquent rent, accelerated rent, attorneys' fees, and certain other charges which were provided for in the lease.

Although all of the defendants are New York residents and the agreements at issue were to be performed in New York, the lease and its guarantees provided that they would be construed and interpreted under the laws of Illinois, where Heller, a Delaware corporation, had its principal place of business. However, both in the court below and in their original briefs in this Court, the parties relied primarily upon New York authorities to support their respective contentions. It is not clear whether the parties did so because they believed that New York law governed or because they believed that there was no material difference between the laws of the two States. Whatever their reasoning, we find no grounds for reversal in the reference to New York law.

■ Because this is a diversity case, we must apply the choice-of-law rules of the forum State, in this instance, New York. *Krauss v. Manhattan Life Ins. Co.,* 643 F.2d 98, 100 (2d Cir.1981). Although New York courts generally accord deference to choice-of-law provisions in contracts, *see, e.g., A.S. Rampell, Inc. v. Hyster Co.,* 3 N.Y.2d 369, 381, 165 N.Y.S.2d 475, 144 N.E.2d 371 (1957), such provisions are not controlling and may be disregarded where the most significant contacts with the matter in dispute are in another State, *Haag v. Barnes,* 9 N.Y.2d 554, 559, 216 N.Y.S.2d 65, 175 N.E.2d 441 (1961); *Perrin v. Pearlstein,* 314 F.2d 863, 867 (2d Cir. 1963). Moreover, in the absence of a strong countervailing public policy, the parties to litigation may consent by their conduct to the law to be applied. *Martin v. City of Cohoes,* 37 N.Y.2d 162, 165–66, 371 N.Y.S.2d 687, 332 N.E.2d 867 (1975); *Trophy Productions, Inc. v. Cinema-Vue Corp.,* 53 A.D.2d 18, 22, 385 N.Y.S.2d 70 (1976); *El Hoss Eng'g & Transp. Co. v. American Indep. Oil Co.,* 183 F.Supp. 394, 399–400 (S.D.N.Y.1960), *rev'd on other grounds,* 289 F.2d 346 (2d Cir.), *cert. de-*

*nied*, 368 U.S. 837, 82 S.Ct. 511, 7 L.Ed.2d 38 (1961).

The parties by their acquiescence also may induce the trial court to assume that foreign law is similar to that of the forum. *Bartsch v. Metro-Goldwyn-Mayer, Inc.*, 391 F.2d 150, 155 n. 3 (2d Cir.), *cert. denied*, 393 U.S. 826, 89 S.Ct. 86, 21 L.Ed.2d 96 (1968); *Hampson v. Bucyrus-Erie Co.*, 464 F.2d 562, 563 (3d Cir.1972); *Petersen v. Chicago, G.W. Ry. Co.*, 138 F.2d 304, 306–07 (8th Cir.1943). As a matter of fact, as supplemental briefs requested by this Court disclose, there is no material difference between the law of New York and the law of Illinois. In sum, therefore, there is no merit in appellants' contention, asserted for the first time in its supplemental brief, that reference to New York law was improper.

The case was submitted to the jury by means of special interrogatories. In response to the first interrogatory, the jury found that Olympic either expressly or impliedly agreed to assume the video equipment lease and the obligation to pay rent thereunder. In response to the fourth interrogatory, the jury found that Kreuter had promised Video Software and its officers that he would assume their obligations and guarantees with respect to the leased equipment. In response to the fifth interrogatory, the jury found that Heller was entitled to pierce the corporate veil of Olympic so as to make Kreuter personally liable for Olympic's default.

With respect to the first interrogatory, the district court instructed the jury that, if Olympic took over Video Software's business, including its premises, its telephones, its employees, its customers, and the work in progress, and continued that business and the use of Heller's equipment, motivated at least in part by an intention to frustrate the rights of creditors, the jury might find an implied agreement on Olympic's part to perform the lease agreement. This was a correct statement of the law. *See Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 182–83 n. 5, 94 S.Ct. 414, 424 n. 5, 38 L.Ed.2d 388 (1973); *Goldstein v.*

*Gardner*, 444 F.Supp. 581, 583 (N.D.Ill. 1978); *Ladjevardian v. Laidlaw-Coggeshall, Inc.*, 431 F.Supp. 834, 838–40 (S.D.N.Y.1977).

With respect to the fourth interrogatory, the district court correctly charged that, if Kreuter, in exchange for the agreement of Software's officers to let him take over the business, after which they would stay and work for him, promised that he would see to the performance of Heller's lease agreement, Heller could recover as third-party beneficiary of that promise. There is no merit in Kreuter's contention that his promise was to answer for the debt of another and therefore was required to be in writing. Kreuter's agreement was with Software's officers and was a direct promise to assume their obligations, not the obligations of a third party. *See G. Carver Rice, Inc. v. Crawford*, 84 A.D.2d 866, 867, 444 N.Y.S.2d 748 (1981); *Oscar H. Wilke, Inc. v. Vinci*, 96 Ill.App.2d 189, 194, 237 N.E.2d 768 (1968); *Tremayne v. McCaskey Register Co.*, 181 Ill.App. 398, 400 (1913). Assuming for the argument only that Kreuter's promise was required to be in writing, his delivery of signed rental checks which contained specific references to the written lease, would be sufficient to satisfy the Statute of Frauds. *See Crabtree v. Elizabeth Arden Sales Corp.*, 305 N.Y. 48, 110 N.E.2d 551 (1953); *Jones v. Olsen*, 80 Ill.App.3d 1016, 36 Ill. Dec. 245, 400 N.E.2d 665 (1980).

To assist the jurors in their consideration of the fifth interrogatory, the district court gave them proper criteria which they could use in deciding whether Olympic's corporate veil should be pierced. These included (1) the absence of the formalities which are part and parcel of normal corporate existence, *i.e.*, the issuance of stock, the election of directors, the keeping of corporate records, etc., (2) inadequate capitalization, (3) personal use of corporate funds, and (4) the perpetration of fraud by means of the corporate vehicle. *See Bartle v. Finkelstein*, 19 A.D.2d 256, 260–62, 241 N.Y.S.2d 655 (1963); *Quaid v.*

*Ratkowsky,* 183 A.D. 428, 432–33, 170 N.Y.S. 812, *aff'd mem.,* 224 N.Y. 624, 121 N.E. 887 (1918); *Ampex Corp. v. Office Electronics, Inc.,* 24 Ill.App.3d 21, 24–25, 320 N.E.2d 486 (1974); *Edwards v. Chicago & N.W. Ry. Co.,* 79 Ill.App.2d 48, 52–53, 223 N.E.2d 163 (1967).

■ Once the jury made a finding of liability, the bulk of Heller's recovery was readily determinable by simple mathematical calculations in accordance with the provisions of the lease. The only items in the computation of damages that were not liquidated, attorneys' fees and the net offset from the sale of the retaken equipment, were stipulated by the parties to be in the respective amounts of $40,000 and $68,000. Where there can be no factual dispute on a particular issue, a directed verdict or judgment n.o.v. may be granted, even in favor of a plaintiff. *See Sotell v. Maritime Overseas Inc.,* 474 F.2d 794, 796 (2d Cir. 1973); *Sprague v. The Texas Co.,* 250 F.2d 123, 124 (2d Cir.1957); 9 Wright & Miller, *Federal Practice and Procedure* § 2535. The district court reserved decision on Heller's motion for a directed verdict but granted its motion for judgment n.o.v., increasing the jury's award from $68,280 to $146,266.87 so as to make it consonant with the specific provisions of the lease and the stipulations of the parties. This procedure, while rare, was not improper in this case.

■ There is no merit in appellants' contention that the rental acceleration clause in the lease constituted an unlawful penalty. *See Fifty States Management Corp. v. Pioneer Auto Parks, Inc.,* 46 N.Y.2d 573, 415 N.Y.S.2d 800, 389 N.E.2d 113 (1979); *Belnord Realty Corp. v. Levison,* 204 A.D. 415, 198 N.Y.S. 184 (1923); *Lu-Mi-Nus Signs, Inc. v. Jefferson Shoe Stores, Inc.,* 257 Ill.App. 150, 154–56 (1930).

We have considered carefully appellants' remaining assertions of error and find them to be without substance. The judgment in favor of plaintiff is affirmed. Plaintiff's cross-appeal from the dismissal of its cause of action for conversion is dismissed as moot.